UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LINCOLN MEMORIAL UNIVERSITY | ) | |
| DUNCAN SCHOOL OF LAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-608 |
| | ) | (VARLAN/SHIRLEY) |
| THE AMERICAN BAR ASSOCIATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on several motions: (1) Plaintiff's Motion for Reconsideration [Doc. 38];[1] (2) Defendant American Bar Association's Motion to Stay [Doc. 41];[2] and (3) Defendant American Bar Association's Motion to Dismiss [Doc. 43].[3] For the reasons explained in this memorandum opinion and order, the Court will deny plaintiff's motion for reconsideration, grant defendant's motion to stay, and deny, without prejudice and with leave to re-file, defendant's motion to dismiss.

## I. Background

This action was previously before the Court on plaintiff's motion for injunctive relief [Doc. 2]. After carefully considering the matter, the Court denied plaintiff's request [Doc.

---

[1]Defendant filed a response in opposition [Doc.47], and plaintiff replied [Doc. 54]. Also, plaintiff filed two declarations in support of the motion [Docs. 40, 46].

[2]Plaintiff filed a response in opposition [Doc. 45], and defendant replied [Doc. 52].

[3]Plaintiff filed a response in opposition [Doc. 48], and defendant replied [Doc. 55].

35].  Although discussed herein to the extent relevant, the Court presumes familiarity with that decision, which plaintiff now asks the Court to reconsider pursuant to Rule 59(e) of the Federal Rules of Civil Procedure [Doc. 38].[4]

## II.     Motion for Reconsideration

Plaintiff moves the Court to reconsider its decision denying plaintiff's request for injunctive relief [Doc. 38].  Various grounds are asserted in support of this request, including that there is newly discovered evidence concerning the constitution of the Appeals Panel, that the Court erred in applying the appropriate standard for reviewing plaintiff's due process claim, that newly discovered evidence demonstrates that plaintiff is suffering irreparable harm as a result of defendant's decision, and that the Court erred in analyzing the harm to defendant and the public interest [Docs. 38, 39].

### A.     Standard of Review

Although the Federal Rules of Civil Procedure do not explicitly authorize motions for reconsideration, they are commonly treated as either a Rule 59(e) motion or a Rule 60(b) motion.  *Hood v. Hood*, 59 F.3d 40, 43 n.1 (6th Cir. 1995).  Plaintiff seeks relief pursuant to Rule 59(e) [Doc. 38].  Because the instant motion was filed within twenty-eight days after the entry of the order denying plaintiff's request for injunctive relief, the Court agrees that the motion should be considered under Rule 59(e).  *Id.* ("[W]hen a post-judgment motion is

---

[4]For consistency, terms defined in the Court's memorandum opinion and order [Doc. 35] are used in the same manner herein.

ambiguous as to whether it is filed pursuant to Rule 59 or Rule 60, if filed within [twenty-eight] days of judgment, the appellate courts have construed it as a Rule 59 motion.").

"A district court may grant a Rule 59(e) motion to alter or amend judgment only if there is: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006) (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)). Rule 59 motions are not "intended as a vehicle to re-litigate previously considered issues; should not be utilized to submit evidence which could have been previously submitted in the exercise of reasonable diligence; and are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." *Kenneth Henes Special Projects Procurement v. Cont'l Biomass Indus., Inc.*, 86 F. Supp. 2d 721, 726 (E.D. Mich. 2000) (emphasis and citation omitted); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (nothing that a Rule 59(e) motion "is not an opportunity to re-argue a case" nor an avenue to raise arguments that "could have, but [were] not" raised before (citation omitted)).

## B. Analysis

### 1. Futility of Exhausting Administrative Remedies

In denying plaintiff's motion for injunctive relief, the Court found that plaintiff had failed to demonstrate a strong likelihood of success on the merits because it was likely required to exhaust its administrative remedy [Doc. 35]. As part of this finding, the Court considered plaintiff's arguments why exhaustion should be excused [*Id*.]. One of the

3

arguments asserted by plaintiff was that exhaustion would be futile [*Id*.]. The Court determined that exhaustion would not be futile:

> Plaintiff asserts that the Appeals Panel, along with the Committee, the Council, and the Consultant, are "part of a conspiracy to restrain free commerce and preclude competition among law schools in violation of the Sherman Act," but plaintiff provides no evidence, only a conclusory assertion, that this is the case. Rather, federal law dictates that the Appeals Panel not be comprised of any "current members of the agency's or association's underlying decisionmaking body that made the adverse decision," and it is subject to a conflict of interest policy. 20 U.S.C. § 1099b(a)(6)(C); 34 C.F.R. § 602.25(f)(1). The Court also recognizes that the Appeals Panel has the authority to affirm, amend, or reverse the decision of the Council, 34 C.F.R. § 602.25(f)(1), and the applicable standard of review is whether the Council's decision "was arbitrary and capricious and not supported by the evidence on record, or inconsistent with the Rules of Procedure and that inconsistency prejudiced its decision," [Doc. 21-2 at 8], a standard similar to that of this Court. *Moreover, it was represented to the Court that the current sitting Appeals Panel was appointed prior to the decision of the Council underlying this case; thus, there is no reason to speculate that the Chair of the Council would appoint individuals who might tend to affirm the Council's decision in a case arising subsequent to the composition of the Appeals Panel.* Given all of this, the Court does not find it is certain that plaintiff's denial of provisional accreditation would be upheld on appeal nor that, if successful, plaintiff's remedy would be inadequate. Indeed, the fact that the Council did not adopt the Committee's conclusion regarding Standard 511 indicates to the Court that the Appeals Panel likewise would not simply affirm the Council's decision, but provide meaningful review.

[*Id*. (emphasis added)].

The day after the Court's memorandum opinion and order was entered, January 19, 2012, plaintiff filed an appeal of the Council's denial of provisional accreditation [Doc. 39]. Then, on January 31, 2012, defendant filed a notice of supplementation of the record and supplemental declaration of Hulett H. Askew [Doc. 37]. The supplemental notice informed

4

the Court that, after the denial of injunctive relief, defendant learned that "due to administrative delays and a large number of volunteer member appointments to be made for Section committee and governance positions, the membership of the 2011–12 Appeals Panel was not constituted until December 18, 2011" [*Id.*].  In addition, the Court was informed that, after the Council denied plaintiff's application for provisional approval on December 20, 2011, it was determined that the public member of the Appeals Panel could not serve on the panel and as a result, the 2010–11 public member was appointed to serve a second term, pursuant to Rule 10(g), on January 25, 2012 [*Id.*].

In its motion to reconsider, plaintiff argues that this newly discovered evidence demonstrates that exhaustion would be futile because the "*post hoc* Appeals Panel is merely a surrogate for the underlying deciders" [Doc. 39].  Plaintiff also asserts that the "*post hoc* appointment" violates defendant's own rules of procedure and further demonstrates the futility of exhaustion [*Id.*].[5]

---

[5]In its reply brief, plaintiff further asserts that permitting members of the Committee to attend and participate in the Council hearing violated defendant's own rules of procedure, specifically Rule 6 and Internal Operating Procedure 19, thus rendering exhaustion futile [Doc. 54].  It is well settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues "deprives the non-moving party of its opportunity to address the new arguments." *Cooper v. Shelby Cnty.*, No. 07-2283-STA-cgc, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010) (collecting Sixth Circuit and district court cases discussing this principle); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (noting that a party waives an issue raised for the first time in a reply brief or motion for reconsideration).  Further, the Local Rules of this District provide that "reply briefs are not necessary and are not required by Court.  A reply brief shall . . . directly reply to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1(c).  Accordingly, as a matter of litigation fairness and procedure, the Court declines to address this argument at this time.

5

As an initial matter, the Court makes clear that its decision that exhaustion of the administrative remedy available to plaintiff would not be futile was not based solely upon the understanding that the Appeals Panel that would hear plaintiff's appeal was appointed prior to the determination of the Council underlying this case. Rather, the Court's decision was based upon several other factors as well, including that plaintiff's allegations of a conspiracy consisting of the Appeals Panel, the Committee, the Council, and the Consultant were conclusory, that "federal law dictates that the Appeals Panel not be comprised of any 'current members of the agency's or association's underlying decisionmaking body that made the adverse decision'"; that the Appeals Panel "is subject to a conflict of interest policy"; that "the Appeals Panel has the authority to affirm, amend, or reverse the decision of the Council"; and that the "applicable standard of review" for the Appeals Panel is "a standard similar to that of this Court" [Doc. 35].

Although plaintiff asserts members of the Appeals Panel will be biased against plaintiff and is "merely a surrogate for the underlying deciders," plaintiff fails to provide any support for this assertion except for the fact that the Appeals Panel was not fully constituted until January 25, 2012; in other words, until after plaintiff filed its appeal. The record leads the Court to conclude that the members of the Appeals Panel, however, most likely will not be biased against plaintiff, despite this fact. One member of the Appeals Panel served as an alternate on the 2010–11 Appeals Panel and one member served as the public member on the 2010–11 Appeals Panel, and each of the three members is subject to and has affirmed that he or she will comply with the conflicts of interest policy set forth in Internal Operating

Practice 19 [Doc. 47]. They all also have prior experience in the accreditation process [*Id.*]. And while there is a mechanism for plaintiff to "request that a member of . . . the Appeals Panel . . . recuse himself or herself from acting in such capacity with respect to the . . . law school [under review]," plaintiff has not taken advantage of this opportunity [Doc. 21-3]. These facts, as well as the points the Court previously noted regarding futility (e.g., the applicable standard of review and the Appeals Panel's authority to affirm, amend, or reverse the decision of the Council), suggest that the current Appeals Panel will likely not serve as a "surrogate for the underlying deciders" [Doc. 39].

Plaintiff cites to *Utica Packing Company v. Block*, 781 F.2d 71 (6th Cir. 1986), claiming it need not demonstrate that the individual Appeals Panel members are biased against plaintiff where the "implementation of the appeal process itself exhibits bias" [Doc. 54]. *Utica*, however, is distinguishable from this case.

In *Utica Packing*, the United States Department of Agriculture ("USDA") filed a complaint with the Secretary of Agriculture, seeking the cancellation of a meat inspection contract between the USDA and Utica Packing Company. 781 F.2d at 73. The Administrative Law Judge ("ALJ") assigned to the case rendered a decision in favor of the USDA, and Utica Packing Company appealed to the USDA Judicial Officer, Donald Campbell, who "acts as the final deciding officer in lieu of the Secretary in Department administrative proceedings . . . ." *Id.* at 72. Campbell affirmed, and Utica Packing Company sought review of the decision. *Id.* at 73. Although the district court granted summary judgment affirming the decision, the Sixth Circuit reversed and remanded the case for further

7

consideration by Campbell. *Id.* at 73–74. Upon further consideration, Campbell reversed the ALJ and entered a decision in favor of Utica Packing Company. *Id.* at 74. The USDA "violently disagreed" with this decision, but its only recourse at that point was to file a motion for reconsideration with the Judicial Officer. *Id.* Before the USDA did so, however, the Secretary removed Campbell from the case and replaced him with a Deputy Assistant Secretary of Agriculture, John Franke, Jr., who was assisted by Richard Davis, an attorney in the Office of General Counsel of the USDA whose immediate supervisor participated in the removal of Campbell and appointment of Franke as well as the prosecution of Utica Packing Company. *Id.* The USDA then filed a motion for reconsideration, which Franke granted. *Id.* Utica Packing Company sought review of that decision, arguing that the replacement of Campbell with Franke violated its due process right to a fair tribunal. *Id.* at 75. The Sixth Circuit agreed, stating:

> There is no guarantee of fairness when the one who appoints a judge has the power to remove the judge before the end of proceedings for rendering a decision which displeases the appointer. Yet that is exactly what occurred in this case. Campbell was appointed Judicial Officer long before the Utica case arose, and considered the case in the normal course of his duties. When Campbell rendered a decision in the case with which USDA "violently disagreed," officials of the department unceremoniously removed him and presented a petition for reconsideration to their hand-picked replacement.

*Id.* at 78. The Sixth Circuit noted that "[i]t [was] of no consequence for due process purposes that [Utica Packing Company] [was] unable to prove actual bias on the part of Franke or Davis." *Id.* "The officials who made the revocation and redelegation decision chose a non-career employee with no background in law or adjudication to replace Campbell." *Id.*

8

"They assigned a legal advisor to the new Judicial Officer who worked under an official who was directly involved in prosecution of the Utica case." *Id.*

Here, the Appeals Panel was initially constituted as of December 18, 2011, two days before the Council's written decision denying plaintiff provisional accreditation. The next month it was determined that the public member could not serve, so the former public member was appointed to serve a second term, pursuant to Rule 10(g). Accordingly, it does not seem that these members were "hand-picked" to handle plaintiff's appeal, especially given that each member is experienced in the accreditation process.[6] In *Utica*, moreover, there was at least some evidence from which one could infer bias; here, however, plaintiff has put forth no evidence, except for the timing of the constitution of the panel, that even suggests bias (e.g., that a member of the Appeals Panel was a Committee member at the time the Committee made the recommendation to deny provisional approval), and the timing appears to have been a result of factors unrelated to plaintiff's application (i.e., administrative delays). In light of these facts, and those points previously made by the Court concerning the futility of exhaustion, the Court does not find there is an "intolerably high" risk of unfairness in plaintiff pursuing an appeal. *Utica Packing*, 781 F.2d at 78.

Regarding plaintiff's contention that the "*post hoc* appointment" of the Appeals Panel violates defendant's own rules of procedure and further demonstrates the futility of

---

[6]The Court observes that plaintiff asserts the decision to deny provisional accreditation was actually made at the December 2–3, 2011 meeting of the Council [Doc. 39]. Even if this is the case and the Appeals Council was not constituted until approximately two weeks after the decision to deny plaintiff provisional accreditation was made, the Court does not find the situation similar to that in *Utica Packing* for the reason that follows in this paragraph.

9

exhaustion [Doc. 39], the Court recognizes that a departure from an accrediting agency's rules will not violate due process unless it has "resulted in any fundamental unfairness arising out of the process employed." *Hiwassee Coll., Inc. v. S. Ass'n of Colls. & Schs.*, 490 F. Supp. 2d 1348, 1351 (N.D. Ga. 2007), *aff'd*, 531 F.3d 1333 (11th Cir. 2008). The Court does not find the departure from Rule 10(g) has resulted in any fundamental unfairness to plaintiff here. There is no indication that any delay in deciding plaintiff's appeal will come about as a result of the setback in fully constituting the panel, nor is there any indication, as previously discussed, that any panel member has a conflict of interest or will be biased against plaintiff.

Plaintiff states that "[c]ourts have recognized that the exhaustion requirement should be excused in cases where there was no reviewing body or review procedure in place" and cites *United States v. Gutierrez*, 443 F. App'x 898 (5th Cir. 2011), *Bickerstaff v. Vinson Guard Service, Inc.*, No. 97-3209, 1998 WL 290208 (E.D. La. June 2, 1998), and *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir. 1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313 (11th Cir. 2001), in support [Doc. 39]. The Fifth Circuit in *Gutierrez*, however, required the government to exhaust the administrative remedies available to it before involuntarily medicating an individual. 443 F. App'x at 904–05. In *Bickerstaff*, the district court held that an ERISA plan manager could not adopt procedures after the fact and then argue that plaintiff failed to exhaust those procedures when they did not exist at the time of the denial of benefits. 1998 WL 290208, at *3. Similarly, in *Curry*, the Eleventh Circuit determined that exhaustion was not required where ERISA plan administrators denied the plaintiff "meaningful access" to

10

the unexhausted procedures. 891 F.2d at 846. Here, however, there were appeal procedures in place and access to them was neither denied nor hindered. The Court finds these cases do not support plaintiff's position, nor persuade the Court that exhaustion should be excused.

Two other cases are cited by plaintiff for the proposition that a "court will set aside agency action that does not follow the agency's own regulation": *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004), and *Rabbers v. Commissioner of Social Security*, 582 F.3d 647 (6th Cir. 2009) [Doc. 39]. These cases, likewise, do not support plaintiff's claim. In *Wilson*, a panel of the Sixth Circuit noted that "'an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'" 378 F.3d at 546–47 (emphasis omitted) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)); *see also Rabbers*, 582 F.3d at 654 (same). The panel went on to state:

> A procedural right must generally be understood as "substantial" in the context of this statement when the regulation is intended to confer a procedural protection on the party invoking it. The Supreme Court has recognized the distinction between regulations "intended primarily to confer important procedural benefits upon individuals" and regulations "adopted for the orderly transaction of business before [the agency]." In the former case, the regulation bestows a "substantial right" on parties before the agency, and "it is incumbent upon agencies to follow their own procedures . . . even where the internal procedures are possibly more rigorous than otherwise would be required." In contrast, in the case of procedural rules "adopted for the orderly transaction of business," an agency has the discretion "to relax or modify its procedural rules" and such action "is not reviewable except upon a showing of substantial prejudice to the complaining party."

11

*Id.* at 547 (alterations in original and citations omitted). The Court has reviewed Rule 10 and finds that the time frame set out in Rule 10 for the appointment of the Appeals Panel falls within the latter category and is intended for the "orderly transaction of business." Plaintiff has not sufficiently demonstrated that it is of the former type, and indeed, given that there appears to be no delay or other irregularity caused by the late appointment of the Appeals Panel, the Court cannot find plaintiff has been prejudiced on the merits or deprived of a substantial right as a result.

In sum, the Court does not find the newly discovered evidence regarding the appointment of the Appeals Panel demonstrates that an appeal would be futile, rendering exhaustion of plaintiff's administrative remedy unnecessary. It therefore finds no basis to reconsider its decision that exhaustion of the administrative remedy available to plaintiff is likely required in this case.

## 2. Likelihood of Success on the Due Process Claim

Plaintiff argues that the Court erred in not analyzing whether it is likely to succeed on the merits of its due process claim under *Judulang v. Holder*, 565 U.S. —, 132 S. Ct. 476 (2011). Plaintiff previously argued that *Judulang* clarified the standard of review applicable to this type of case, but the Court disagreed, finding in part that "*Judulang* . . . does not address the review of a decision of a quasi-governmental accrediting agency like the Section" [Doc. 35]. The Court instead examined plaintiff's due process claim under the framework announced in *Thomas M. Cooley Law School v. American Bar Association*, 459 F.3d 705 (6th Cir. 2006) [*Id.*]. The Court agrees with defendant that plaintiff attempts to re-argue a

previously-considered issue that plaintiff had a full and fair opportunity to present [*See* Doc. 47]. Accordingly, the Court declines to reconsider plaintiff's due process claim under *Judulang*.

In addition, plaintiff fails to identify a clear error of law or newly discovered evidence concerning the Court's analysis of its due process claim. Plaintiff also does not cite an intervening change in controlling law or provide any example of manifest injustice. Rather, in its reply brief, plaintiff seemingly abandons its argument that the standard set forth in *Judulang* applies here and argues that the Court did not properly apply the *Cooley* standard [Doc. 54]. It is well settled that a movant cannot raise new issues for the first time in a reply brief because consideration of such issues "deprives the non-moving party of its opportunity to address the new arguments." *Cooper v. Shelby Cnty.*, No. 07-2283-STA-cgc, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010) (collecting Sixth Circuit and district court cases discussing this principle); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (noting that a party waives an issue raised for the first time in a reply brief or motion for reconsideration). Further, the Local Rules of this District provide that "reply briefs are not necessary and are not required by Court. A reply brief shall . . . directly reply to the points and authorities contained in the answering brief." E.D. Tenn. L.R. 7.1(c). Accordingly, as a matter of litigation fairness and procedure, and because the parties had ample opportunity to litigate the due process claim under the *Cooley* standard before the Court initially decided the issue, the Court declines to address this argument.

### 3.        Irreparable Harm

The Court previously determined that plaintiff failed to establish that it was suffering the type of irreparable injury necessary to obtain preliminary injunctive relief [Doc. 35]. Plaintiff now asserts that the Court erred in this determination because case law establishes that loss of accreditation is a *per se* showing of irreparable harm [Doc. 39]. Plaintiff also asserts that there is newly discovered evidence that demonstrates irreparable injury [*Id.*].

Regarding plaintiff's assertion that the case law establishes that loss of accreditation is a *per se* showing of irreparable harm, the Court finds plaintiff is merely reasserting, in different terms, an argument that was previously made -- that is, that federal courts grant TROs to protect reputation when the denial of accreditation violates due process. The Court found the cases cited by plaintiff inapposite because they involved schools that had their preexisting accreditation withdrawn [*See* Doc. 35]. As the Court has noted in this memorandum opinion, Rule 59(e) motions are not an appropriate avenue to re-argue points previously raised or assert issues that could have been, but were not, raised before. Nevertheless, the Court has reviewed the new cases cited by plaintiff in support of its motion for reconsideration, including *Western State University of Southern California v. American Bar Association*, 301 F. Supp. 2d 1129 (C.D. Cal. 2004), *Hampton University v. Accreditation Council for Pharmacy Education*, 611 F. Supp. 2d 557 (E.D. Va. 2009), and *Hiwassee College v. Association of Colleges & Schools*, No. 3:05-CV-1282005 U.S. Dist. LEXIS 39221 (E.D. Tenn. March. 31, 2005), and likewise finds them inapposite because they too involved the withdrawal of accreditation. The Court further finds that *Wilk v. American*

14

*Medical Association*, 671 F. Supp. 1465, 1490 (N.D. Ill. 1987), does not stand for the proposition asserted by plaintiff: that denial of accreditation of a hospital, or any other type of entity or organization, is "*per se*" irreparable injury.

Plaintiff also submits that there is newly discovered evidence of irreparable injury, particularly that its "students are both transferring and withdrawing from [the law school] in significantly increased numbers and the number of students applying for admission to [the law school] has also decreased from that in prior years" [Doc. 39]. In support, plaintiff submits two declarations of Sydney Beckman, the Dean of the law school [Docs. 40-1, 46-1]. Dean Beckman states that, as of February 4, 2012, the law school had received, for 2012 admission, approximately twenty-six percent fewer applications for full-time students and approximately fifteen percent fewer applications for part-time students compared to 2011; that eight students have withdrawn from the law school as a result of defendant's decision; that competitor law schools, including Appalachian School of Law, are openly soliciting plaintiff's students to transfer to their schools, and more students are making preparations to transfer to other law schools by requesting letters of good standing [*Id*.]. The Court does not find that this newly discovered evidence demonstrates plaintiff is likely suffering irreparable harm.

First, Dean Beckman's declarations of injury, for the most part, fail to provide information that supports the conclusion that the injuries were caused by defendant's accreditation decision. While Dean Beckman identifies a drop in applications compared to the prior year, he fails to articulate whether the decline is a result of defendant's decision or

whether it is the result of other factors discussed in this case previously [*See* Doc. 21-6 (indicating a decline in applications since 2009); Doc. 36]. Dean Beckman similarly provides no information to allow the Court to conclude that students are seeking to transfer as a result of defendant's decision, except for the eight students who have disclosed that they were withdrawing from the law school as a result of the defendant's decision. And that other law schools may be soliciting plaintiff's students to transfer to their schools does not necessarily mean that plaintiff's students are seeking to transfer on the basis of defendant's decision; other factors could be relevant. Indeed, the excerpt submitted from Appalachian School of Law's website, although indicating that it is offering application fee waivers for students from Lincoln Memorial's Duncan School of Law, does not expressly encourage plaintiff's students to transfer to Appalachian School of Law because of defendant's decision or even reference the defendant's decision [*See* Doc. 46-2].

Second, the Court previously found that plaintiff's asserted harms were not irreparable because the law school could re-apply for accreditation after ten months from the date of the letter reporting the Council's decision, or sooner for good cause. Dean Beckman's declarations do not dispute this point, and plaintiff even submits that it has "requested that the ABA waive the waiting period for re-application for provisional approval . . . ." [Doc. 39]. Moreover, to the extent that students are transferring out of or withdrawing from the law school, there are no allegations that the loss of tuition from these students could not be remedied by money damages. *See Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71

16

F.3d 574, 581 (6th Cir. 1995) ("[M]onetary damages do not generally constitute irreparable harm." (citations omitted)).

Third, the Court recognizes that "newly discovered evidence" for the purposes of Federal Rule of Civil Procedure 59(e) is evidence that "pertain[s] to facts which existed at the time of trial." *Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 136 (6th Cir. 1990) (emphasis omitted); *see also Estate of Leroy Hickman v. Moore*, Nos. 3:09-CV-69, 3:09-CV-102, 2011 U.S. Dist. LEXIS 118576, at *10 (E.D. Tenn. Oct. 13, 2011). Plaintiff states that the newly discovered evidence "has developed since the Court's January 6, 2012 hearing" [Doc. 39]. Thus, it is not newly discovered evidence.

The Court also highlights that it previously found plaintiff's alleged harms would not be undone by granting the relief plaintiff requested [Doc. 39]. Despite plaintiff's alleged new harm, the Court finds this still to be true. Moreover, plaintiff asks the Court to preserve the *status quo* as it existed prior to defendant's decision; that is, that the law school's "application remains pending" [Doc. 39]. Defendant, however, posted the following announcement on its website after plaintiff filed an appeal, which effectively serves the same purpose:

> Lincoln Memorial University Duncan School of Law has appealed the Council's denial of its application for provisional approval. The Council's decision is stayed pending the decision of the Appeals Panel under Rule 10 of the Rules of Procedure for Approval of Law Schools.

[Doc. 47].

In sum, the Court does not find the newly discovered evidence establishes irreparable injury. The Court therefore finds no basis to reconsider its decision in this regard.

### 4.  Harm to the Others, Including Defendant, and the Public Interest

The Court previously determined that if the Court were to grant the requested injunctive relief, defendant would suffer substantial harm because its free speech rights would be compromised [Doc. 35]. The Court also previously determined that the requested injunction would not serve the public interest [*Id.*]. Plaintiff now asks the Court to reconsider these conclusions, but the Court declines to do so for two reasons.

First, plaintiff's requested relief—that defendant "be ordered to post on its website this Court's reconsidered Opinion and Order finding that [the law school] is entitled to injunctive relief because it is likely to prevail on its claim that [defendant's] decision was arbitrary and capricious" [Doc. 39]—is merely a reiteration of its previous request for relief. As the Court has repeatedly noted throughout this memorandum and opinion, a Rule 59(e) motion is not the proper avenue to raise arguments that were or could have been raised before. Nevertheless, the posting of such would still compromise defendant's free speech rights for the reasons previously explained.

Second, plaintiff claims that an injunction would "protect the public's interest in the accurate reporting of accreditation decisions and the need to ensure that such decisions are not made in an arbitrary and capricious manner" [Doc. 39]. While the Court would tend to agree had plaintiff demonstrated that it is likely to succeed on the merits, plaintiff has not done so.

18

In sum, for the reasons stated above, the Court will deny plaintiff's motion for reconsideration.

## III. Motion to Stay

Defendant moves the Court for a stay of this litigation [Doc. 41]. Defendant asserts a stay is appropriate because plaintiff has filed an appeal of the Council's decision denying provisional accreditation with the Appeals Panel [*Id.*]. Defendant further asserts a stay will allow plaintiff to properly exhaust its administrative remedies, allow the Appeals Panel a full opportunity to consider plaintiff's claims, avoid premature interference with the Appeals Panel's processes, and provide a complete administrative record for judicial review [*Id.*].

Plaintiff opposes the motion, relying in part upon the arguments set forth in the motion for reconsideration [Doc. 45]. As the Court has found that motion lacking merit, this basis for opposing the motion to stay likewise lacks merit. Plaintiff also asserts that, in the event the Court denies its motion for reconsideration, the Court should stay only plaintiff's due process claims, not plaintiff's antitrust claims, because plaintiff's antitrust claims are not subject to exhaustion of administrative remedies [*Id.*]. In support, plaintiff cites *Tate v. Chiquita Brands Int'l Inc.*, No. 1:09-CV-6, 2009 U.S. Dist. LEXIS 68670 (S.D. Ohio Aug. 6, 2009), and *Bell v. Hercules Liftboat Co.*, No. 11-332-JJN-SCR, 2011 U.S. Dist. LEXIS 76756 (M.D. La. July 15, 2011) [*Id.*].

The Court initially notes that both *Tate* and *Bell* fail to support plaintiff's contention. In *Tate*, the defendants moved to dismiss or stay plaintiff's ERISA claim on the basis that the plaintiff had not exhausted his administrative remedies. 2009 U.S. Dist. Lexis 68670, at *1.

19

The Court determined that it would be inappropriate to do so because it could not determine whether the plans at issue were subject to ERISA and required the plaintiff to exhaust administrative remedies. *Id.* at *18. In *Bell*, the defendant moved to stay the action, arguing that plaintiff's retaliation claim was governed by the Americans with Disabilities Act, which required exhaustion of administrative remedies. 2011 U.S. Dist. LEXIS 76756, at *2–3. The court denied the motion because the plaintiff asserted that her retaliation claim was based solely on state law, which did not require exhaustion. *Id.* at *7.

The Court also recognizes that the power of a court to stay proceedings is "'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Esperson v. Trugreen Ltd. P'ship*, No. 10-2130-STA, 2010 U.S. Dist. LEXIS 64637, at *4 (W.D. Tenn. June 29, 2010) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Three factors are considered when determining whether to stay an action: "(1) potential prejudice to the non-moving party; (2) hardship and inequality to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by the stay." *Id.* at *5. Considering the first factor, the Court finds plaintiff would not likely suffer prejudice because its status as an unaccredited law school awaiting a final decision regarding provisional accreditation would not change. Considering the second factor, defendant would suffer hardship because it would be required to litigate issues that are currently under its review. Finally, considering the third factor, the Court finds a stay will save judicial resource because a decision of the Appeals Panel will clarify, limit, or eliminate some or all of the issues involved in this case.

20

The Court further observes that plaintiff has admitted that its antitrust claims are grounded in the same allegations concerning plaintiff's due process claims [Doc. 5].

In sum, the Court finds that a stay of this litigation until such time the Appeals Panel renders a decision will serve the interests of judicial economy and efficiency. The Court will therefore grant defendant's motion and stay this case.

## IV. Conclusion

For the reasons explained herein, the Court hereby **DENIES** Plaintiff's Motion for Reconsideration [Doc. 38] and **GRANTS** Defendant American Bar Association's Motion to Stay [Doc. 41]. This case is **STAYED** through and until **May 3, 2012**,[7] and defendant is **ORDERED to submit a status report** notifying the Court of the Appeals Panel's decision on or before May 3, 2012. In light of the stay, the Court also hereby **DENIES, without prejudice and with leave to re-file within twenty-one (21) days from the date the stay in this case is lifted,** Defendant American Bar Association's Motion to Dismiss [Doc. 43].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

---

[7]Defendant represents that the Appeals Panel's decision will be rendered no later than this date [Doc. 42].